The next case on for argument is also a motion in the case of bail motion in the case of United States v. Gallagher. May it please the court. My name is Jay Ofsialvich and I'm here on behalf of United States v. Gallagher. The court has committed error when it determined that there are no conditions of release that can ensure the safety of the community or guarantee Mr. Gallagher's appearance in court. The court's determination is belied by the proposed conditions made by the magistrate judge. These conditions would have kept Mr. Gallagher on a very tight leash. Amongst the conditions were that he would have to participate in the PROS, the personalized recovery orientation services program. This program would have assigned Mr. Gallagher both a physician and a therapist. He would have been required to attend counseling three to five days per week as determined by the program. This included both individual counseling and group sessions. He would be provided medication as needed. That's part of the reason for having the physician involved. And the program would also be giving him job and life skills. In addition, the proposed conditions by the magistrate judge addressed his housing needs. Though not perfect, he would have been temporarily housed in a shelter until he could work with social services to obtain appropriate housing, which he had before he was arrested. To help ensure the safety of individuals who were involved in the incident that led to these charges, he would have required permission from pretrial services to enter the courthouse. And any time he entered the courthouse, the magistrate judge was going to require him to be escorted by a member of the Federal Public Defender's Office. In addition, the court was aware that he would have to meet with his pretrial services officer and confirmed with that office that those meetings could take place outside of the courthouse to ensure that there would not be any further incidents. In addition, she would have added at the request of the government a request that he not make any additional threats along with the normal standard conditions that are applied in all situations of pretrial release. In addition, when the question came up before the district court judge, defense counsel proposed that he also be placed on electronic monitoring. In rejecting these proposed conditions of the magistrate judge, the district court cited red flags that it saw that existed in this situation. In identifying red flags, he cited a number of incidents around the country. He referenced James Hopkins, who was the shooter who went after the Republican congressional representatives at a baseball practice in Virginia. He referenced Jared Ramos, the shooter at the Annapolis newspaper. He referenced incidents that could either relate to an incident in Toronto or in New York City where cars were driven into crowds. And he referenced incidents where individuals shot into crowds. None of these incidents are analogous to what happened in Mr. Gallagher's case. In all of these incidents, except for one, there were no red flags. These were not individuals who were identified or on the radar of any law enforcement, except for Jared Ramos, who had a long-term grudge against the newspaper, and even then, at the time of the incident, was not on law enforcement's radar that there was a problem. In Mr. Gallagher's case, the fact that your client has a long history of threats against various people makes him a safer candidate for release than people that no one knew had any problem until they started shooting? Is that the argument? Because now they can watch out for him and put him on 24-hour surveillance and devote all those resources to watching him in the community. There will be resources on him. He will be watched not just by law enforcement, but he will also be watched by his health care providers. He'd be on a very short and tight leash, and if there's any problem, he can easily be yanked back by the collar. Now, one of the other differences here is that . . . One of those conditions, it seems to me, sort of flies in the face of what you just said, and that is his being, at least as I read the magistrate judge's proposed recommendations, was he was to be in the courthouse, in the custody, if you will, of his counsel. That's . . . Well, yes, because part of the idea is that . . . . . . between a rock and a hard place if something starts to go south, as we say. One of the things is that we might be able to diffuse the situation. Our interpretation of what happened and what we saw in the videotapes is that there was actually a poor job being done of trying to diffuse the situation. If you would like, we can actually provide the videotape, which was given to the magistrate judge in the district court. We'd be happy to give that to the court. There are different . . . . . . either of my colleagues will let you know. There are different interpretations of what happened in that situation. What we do know is that every time that Mr. Gallagher has had an incident where he has had one of these In this situation, while he initially acted out and verbally acted out against the bluecoats at the courthouse, he then went to follow their commands and wanted to go up to the Small Business Administration office to get his receipt for his cell phone. He was turned around by another security officer and sent back to the desk where they gave him his cell small outburst, and he then went to leave the building. He was escorted out of the building. He did not return to the building. He made no attempt to return to the building. In any of his other . . . A technical question. This is unlike the last case, which was here as a motion for bail pending an appeal that has . . . is going to raise other issues about a conviction. This technically . . . am I right that maybe you are making a motion for bail pending the resolution of your appeal, but your appeal is the appeal of the denial of bail? So we in effect would be disposing one way or the other of an appeal here from the district court's . . . Correct. Correct. Yes. And this is all release pending trial or some other disposition of the case. Do we have a trial date yet? No, we do not. We're still at a very early stage in the proceedings here. I do not even believe that other than the detention motion, any other pretrial motions have been filed. So this is still at the very earliest stages. And I just don't know from . . . because I haven't reviewed the statistics, but how quickly are cases of this sort moving through the Western District? To be honest, it's hard for me to say. Cases generally are moving slower. We don't have a rocket docket like they do in Virginia. I know Judge Larimer proposed . . . suggested that maybe this case should move through a little quicker. I am not the trial attorney in this case, so I can't give you an answer. I know that there is other work that is currently being done on the matter, however. We're not talking about a twelve-defendant case with . . .  . . . . . . . . . . . . A couple of days, less than a week would be my guess, if I were to make any guesses on that at all. Anything else you would like to hear from the court? I think we have gotten to the crux of my argument. I just hope that you would grant Mr. Gallagher release pending trial, or at least send this back to the District Court for reconsideration of its determination. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. Mary Kathryn Baumgarten for the United States. The standard of review is very high. It is clear error. This court, generally under the Barrios-Barrios case, defers to the District Court's findings with respect to not only the factual findings, but also the ultimate assessment of those findings. Acknowledging that the District Court's findings are not based on factual evidence, but on the evidence of the defendant, his dangerousness, and his risk of flight. I think we are all clear here. The defendant, multiple times to multiple court security officers, threatened to kill them on April 26, 2018, because they asked him to get the laminated card that is part of the process to give him back his cell phone. He has an extensive, explosive history, not only in this building, but at many other federal agencies. It is set forth in the pre-trial services, or the bail report, we generally refer to it as the bail report, sets those forth in detail. Today, the day that he was there, April 26, it was a small business administration. The week before, it was the IRS where he threatened to kill a security officer there. The day before this case, he had an ACD in a local town court because he threatened to kill a librarian because she confronted him about how he was treating other patrons. The same with Wegmans, a very large grocery store. This may not be exactly within the purview of this court, but I'm curious, at the place where he is detained, are there mental health services available to him? There should be, Your Honor. The quality, I know that... You say there should be, but are there? It is my understanding that he then was prescribed at least medication, Paxil, to address some of his issues. The issue is the availability of mental health. That's clear in the record, but the defendant has chosen at various times not to follow through on his mental health treatment. As a result of that, he cycles. Within a 30-day period of time, I'm sure this court is very aware of, not just the examples I cited, but also the Department of Labor. Do you have a diagnosis that's part of the record here? I'm sorry? Do you have a diagnosis? I don't see one specifically. I reviewed the transcripts again this morning, and it appears as if there's some issue taken by the PD's office, the trial counsel, about the adequacy of that. To answer the question procedurally, I'm not the trial counsel. Having said that, I did speak with trial counsel for the U.S. Attorney's Office in Rochester. It is my understanding that the defense has asked for multiple adjournments with respect to the case. The court correctly noted, Judge Larimer, I believe, during his decision that he rendered on the bench with respect to reversing or vacating the orders of release, did say, encouraged the parties, let's get your trial. This seems as if this is a case that screams out for an immediate trial as quickly as possible. There's video, as we noted, no audio in that. You have sworn statements of three court security officers, just like that are here. I looked at the gentleman's badge, that say that this is what he did. It's very clear the jury is going to have to make that determination. It is my understanding the government is ready to proceed to indictment, but specifically the PD's office has requested these adjournments and has asked that it not proceed to indictment. At this juncture, we will go, but the PD's office has requested some additional delay. I understand it's, I'm not assailing anybody from doing that, but I wanted it to be clear that we're not being dilatory on the case. The PD being the federal public defender . . . Correct. Yes, I should say. I did not mean to be disrespectful by calling them the PD's. No, I didn't think you were being . . . I just wanted to be clear. In this case, the judge was very thoughtful. He was very concerned. He did a risk assessment. He was very clear that that's what district courts do all the time, that make difficult decisions about releasing somebody. Acknowledging what it means, acknowledging that there may be better health, mental health treatments available on the outside, but having said this, this is a defendant who in the court's well-reasoned basis has identified the factors that it disagreed respectfully and was able to do so de novo, look at the same facts. I don't believe that anybody's disagreeing about the facts. It's the ultimate assessment of those facts. Thank you, Ms. Baumgartner. Thank you. Since I gave your predecessor a minute, which lapsed into something more than that. Well, thank you, Your Honor. I do appreciate that. Yes, the general facts we're not in disagreement with. Whether or not we are asking for delays, it's because we are working on this case and trying to move it forward. The case does require investigation. I think it's important . . . I find it unusual. I don't know. You're sitting up here. I can't remember. Were you an assistant U.S. attorney? Yes. All right. Well, with two former assistant U.S. attorneys who I think would find it . . . at least I find it odd that the FPD's office is able to delay a presentation to a grand jury. The counsel who's working this case is a very good trial attorney, Your Honor. Must be. Yes. She just joined our office just over a year ago, and we're very lucky that we were able to get her to join us. We're all lucky. One of the things when you look at . . . the district court's determination really did not go over . . . did not address why the magistrate judge's proposed conditions could not ensure the safety of the community or his appearance in court. And I think that becomes a very important factor in trying to determine whether or not these conditions will protect the community and will show . . . will have Mr. Gallagher appear. Thank you. Thank you, Your Honor. Thank you both. As with the preceding case, we'll get you a decision shortly.